IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYNTHIA GAMBLE *AS ADMINISTRATIX PENDENTE LITE OF THE ESTATE OF THOMAS J. HENISCH, DECEASED*, | 23cv2147<br>ELECTRONICALLY FILED |
| Plaintiff, | |
| v. | |
| PACCAR, INC., OSHKOSH CORPORATION, AND MCNEILUS TRUCK AND MANUFACTURING, INC., | |
| Defendants. | |

**MEMORANDUM OPINION**

Before the Court is a Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant PACCAR, Inc., ("Paccar") along with its brief in support of same. ECF 22 and ECF 23. Plaintiff filed a Response (ECF 25) and Paccar filed a Reply. ECF 27. For the reasons set forth below, Paccar's motion will be DENIED.

**I. Standard of Review - Rule 12(b)(6)**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit

1

explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**II. Relevant Factual Background**

The following facts taken directly from the Second Amended Complaint are deemed to be true, solely for the purposes of adjudicating this motion:

6. Defendant Paccar manufactured and/or sold the Peterbilt semi tractor-trailer and/or cement mixer that decedent was operating at the time of the subject incident as described below and/or said defendant Paccar are the successors to the entity which designed, manufactured and/or sold said semi tractor-trailer and cement mixer, having acquired all of said entity's assets, liabilities and/or duties and continuing said entity's product line(s).

*   *   *

9. At all relevant times, defendant Paccar and/or their predecessors in interest acted by and through its agents, servants, assignees and/or employees who were acting in the course and
scope of their employment, agency, servitude or assignment with defendant Paccar on defendant Paccar's behalf, business and/or interest.

*   *   *

12. On June 23, 2021, at or around 1:30 P.M., decedent was operating, using, and/or in the vicinity of a 2002 Peterbilt semi tractor-trailer, VIN 1NPALU0X02D574277 ("subject vehicle"), designed, manufactured and/or sold by defendant PACCAR, Inc., and intended for use by decedent under the scope of his employment.

13. The subject vehicle was equipped with a cement mixer . . .

*   *   *

15. The mixer is equipped with a hydraulic chute, from which the cement in the mixer is poured.

16. At or around that date and time, decedent was operating the subject vehicle and the cement mixer at an unknown location during the scope of his employment at Riverside Concrete & Supply, Inc. ("Riverside").

17. At some time during his operation of the subject vehicle and the cement mixer, the vehicle and mixer were brought to a stop, and decedent stood behind the vehicle near the mixer and chute.

18. At some time while decedent was standing near the back of the cement mixer, the chute of the mixer began to move, violently striking him in the abdomen and causing severe injuries.

*   *   *

3

> 22. Decedent then drove the subject vehicle back to his place of employment—Riverside Concrete & Supply, Inc.—located at 889 Pennsylvania Avenue, Coraopolis, Pennsylvania 15108.
>
> 23. At approximately 2:53 P.M., decedent arrived at Riverside's premises, where he parked the subject vehicle, opened the driver side door, and slid out of the vehicle.
>
> 24. Other Riverside employees came to decedent on the ground when he complained of pain in his abdomen and numbness in his extremities. One of Riverside's employees called for emergency medical services, and decedent was transported to Allegheny General Hospital to receive medical treatment for his grievous injuries.
>
> 25. Decedent was then hospitalized for several months, and he died on September 5, 2021, as a result of his grievous, and ultimately fatal, injuries.

ECF 20.

### III. Analysis

Paccar's motion suggests all claims brought against it should be dismissed because Plaintiff failed to alleged facts which could plausibly give rise to her entitlement for relief against Paccar. There are four claims brought against Paccar: (1) strict liability – failure to warn; (2) strict liability – defective design; (3) negligence; and (4) wrongful death.

#### A. Strict Liability – Failure to Warn Claim

The elements of a strict liability in the failure to warn context were recently reiterated in *Whyte v. Stanley Black & Decker, Inc.*, where the United States District Court for the Western District of Pennsylvania noted:

> Following the Second Restatement of Torts, Pennsylvania recognizes a strict-liability claim arising from a defective warning. *Tincher v. Omega Flex, Inc.*, 628 Pa. 296, 104 A.3d 328, 415 (2014); *Phillips v. A-Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995). To succeed on a strict-liability failure-to-warn claim, the plaintiff "must establish only two things: [(1)] that the product was sold in a defective condition 'unreasonably dangerous' to the user, and [(2)] that the defect caused plaintiff's injury." *Phillips*, 665 A.2d at 1171; *Pavlik v. Lane Ltd.*, 135

> F.3d 876, 881 (3d Cir. 1998) (citation omitted); *see also Dorshimer v. Zonar Sys.*, 145 F. Supp. 3d 339, 353 (M.D. Pa. 2015) ("The adequacy of the warning is evaluated solely on the basis of whether the warning was inadequate and a better warning would have prevented the injury." (cleaned up)).

*Whyte,* 514 F. Supp. 3d 684, 697 (W.D. Pa. 2021).

### B. Strict Liability – Defective Design Claim

The elements of a strict liability in a defective design context are as follows:

> In Pennsylvania, to prevail on a claim of defective design in a product liability action, a plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm. *Ellis v. Chicago Bridge & Iron Co.*, 376 Pa.Super. 220, 545 A.2d 906, 909 (1988).

*Martinez v. Triad Controls, Inc.*, 593 F. Supp. 2d 741, 756 (E.D. Pa. 2009).

### C. Negligence

The negligence theory advocated by Plaintiff is that: (1) Paccar had a duty to "properly manufacture . . .distribute . . . and sell" the subject vehicle, (2) it breached some or all of those duties; and (3) the breach(es) caused Plaintiff's decedent to suffer injuries from which he ultimately died.

### D. Paccar's Position

In a nutshell, Paccar claims it is entitled to have these three claims (failure to warn, defective design, and negligence) dismissed because Paccar only manufactured the truck chassis. Paccar further suggests that it is blameless because the chassis' construction and/or its relation to the chute of the mixer is of no moment. While Paccar's assertions may certainly form the basis of its defenses to these claims, these assertions are premature, and better left for the summary judgment stage of this litigation should the evidence bear them out.

Paccar also urges this Court to dismiss these thee claims by suggesting that facts referenced above in "II." do not raise a reasonable expectation that discovery will reveal evidence of the elements necessary to prove any one of these claims – essentially arguing the claims against it are not plausible.  However, the Second Amended Complaint alleges that "Paccar manufactured and/or sold the Peterbilt semi tractor-trailer and/or cement mixer that decedent was operating at the time of the subject incident . . . and/or said defendant Paccar are the successors to the entity which designed, manufactured and/or sold said semi tractor-trailer and cement mixer . . . ." ECF 20 (emphasis added).  Based on these allegations, accepted as true, Paccar either made the subject vehicle or moved the subject vehicle through the stream of commerce prior to the vehicle's contact with Plaintiff's decedent. There is also the allegation that even if Paccar did not do so, its predecessor did.  Considering Pennsylvania's successor liability theory, this Court cannot -- at this juncture of the legal proceedings -- state that Paccar could never be held legally liable for the manufacture, sale, or distribution of the cement mixer.

Next, Paccar argues that Plaintiff has "lumped" all Defendants together in such a way that she failed to provide individual allegations against each one.  Defendant is essentially claiming that asserting the same allegations against each of three Defendants violates the *Iqbal/Twombly* standard and requires this Court to dismiss the Second Amended Complaint.  In support of this argument, Defendant cites to *McGee v. Johnson & Johnson*, No. CV 21-639, 2023 WL 4765454 (W.D. Pa. July 26, 2023), where the defendant argued that the amended complaint filed in its case impermissibly "lump[ed] all Defendants together and fail[ed] to distinguish among their alleged acts and omissions and their specific roles in causing Plaintiff's alleged injury." 2023 WL 4765454 at *13.  In holding that Plaintiff failed to adequately allege her claims against J&J and Ethicon, the Court noted as follows:

6

> . . . [T]he Court finds that Plaintiff has not adequately alleged her claims against J&J and Ethicon. As Defendants indicate, in the Amended Complaint's 306 paragraphs, Plaintiff includes many allegations against Mentor specifically, she states other allegations against Defendants as a group, and she occasionally mentions J&J or Ethicon specifically. With regard to her allegations against J&J and Ethicon specifically, Plaintiff argues – at most – that they (perhaps along with Mentor) engaged in deceptive marketing. <u>Plaintiff does not state a claim for deceptive marketing in her Amended Complaint</u>, however, nor has she indicated how allegations of deceptive marketing are relevant to her claims of strict liability or negligence for a manufacturing defect at Counts One and Four.

*Id.*[1]

This Court is (1) not bound by the decision in *McGee*, and (2) more importantly, finds the facts of the *McGee* do not apply to instant situation where Plaintiff has made specific allegations against Paccar – albeit the same allegations she makes against two other Co-Defendants. Here, Plaintiff does assert that Paccar, "manufactured and/or sold the Peterbilt semi tractor-trailer and/or cement mixer that decedent was operating at the time of the subject incident as described below and/or said defendant Paccar are the successors to the entity which designed, manufactured and/or sold said semi tractor-trailer and cement mixer, having acquired all of said entity's assets, liabilities and/or duties and continuing said entity's product line(s)." ECF 20. As noted, Plaintiff likewise makes these same legal assertions against two other defendants – McNeilus, and Oshkosh -- in her claims against them.

Although these allegations are identical among as to each of the three defendants, this is not the same (as Paccar likes to say), "lumping" all of the Defendants together leaving each with no clear picture of what each has done to be found liable under one or more tort theories. Defendants should know what they did (or did not) manufacture, sell, or distribute, or what liability(ies) each assumed under a successor liability theory to with respect to the subject

---

[1] The Court in McGee also noted that Counts One, Two and Four were being dismissed on other grounds.

7

vehicle. Plaintiff does not know which Defendant: supplied certain parts, assembled parts to form the entire vehicle, how the parts a Defendant manufacture or supplied affected other parts of the vehicle, and/or placed the vehicle in the stream of commerce – at least not at this juncture. Discovery, and perhaps even Defendant's own Rule 26 disclosures, will better enable Plaintiff to assess whether she has sued an extraneous corporate entity or two who can bear no liability under either a strict product liability or negligence theory. Alternatively, she may determine, through discovery and/or Rule 26 disclosures that all three Defendants were appropriately named as defendants to this lawsuit under one tort theory or the other.

In short, it is too early in the legal proceedings for this Court to determine whether Paccar (or its predecessors) did or did not manufacture, sell, or distribute the subject vehicle (or a component part) whose mixer chute contacted Plaintiff in such a way so as to ultimately kill him. Likewise, it is too early in these proceedings for the Court to determine as a matter of law whether Paccar is or is not negligent. Most importantly, given the nature and stage of this lawsuit – which sounds (in part) in strict product liability – the Court finds that "lumping" of each Defendant with the other by advancing the same factual claims against each of them is to be expected. Without pre-complaint discovery, Plaintiff has no way to know if any Defendant – when there are several who possibly manufactured and/or moved the vehicle and/or its component parts through commerce, and where successor liability may implicate the involvement of one or more of those Defendants – was the manufacturer, distributor, and/or seller of any portion of the subject vehicle that could be defective.[2] Here, Plaintiff has made

---

[2] Although Defendant cited to federal cases where a complaint was dismissed for "lumping," no one of those cases emanated from a federal court within the Third Circuit. Conversely, in *First Liberty Ins. Corp. v. Haier US Appliance Sols., Inc.*, No. CV 23-2268-KSM, 2023 WL 5832163, at *4 (E.D. Pa. Sept. 8, 2023), the United States District Court for the Eastern District of Pennsylvania noted, "although four Defendants are named, they are named in the alternative, such that—except for the deficiencies discussed later in this Memorandum—GE Appliances has adequate notice of the claims being brought against it." See *Milo, LLC v. Procaccino*, CIVIL ACTION NO. 16-5759, 2020 WL 1853499, at *10 (E.D. Pa. Apr. 13, 2020) ("[W]hether a complaint is an impermissible shotgun

very specific allegations against each Defendant, providing fair notice of what all the potential claim(s) are against each Defendant as well as the grounds on which those claims rest. That is all that is required at this stage of the legal proceedings.

The fact that Plaintiff asserts the same allegations against each Defendant is better remedied through Defendants' independent Answers which should begin to clarify the roles –if any – each Defendant played in the manufacture, sale, and distribution of the vehicle and/or component part(s) at issue.  After all discovery is complete, any Defendant can certainly file a Rule 56 motion asking this Court to grant summary judgment, arguing, at that point in time, that no evidence of material fact exists which could support a finding of liability against that Defendant.[3]

**IV. Conclusion**

Based on the foregoing law and authority, the Court will DENY the Defendant Paccar's Motion to Dismiss. An appropriate Order follows.

                                          s/Arthur J. Schwab
                                          ARTHUR J. SCHWAB
                                          United States District Judge

cc:       All ECF-registered Counsel of Record

---

pleading is not wholly dependent on whether it incorporates all preceding paragraphs or names multiple defendants, but on whether the complaint 'gives the defendants adequate notice of the claims against them and the grounds upon which each claim rests.' " (quoting M.B. v. Schuylkill County, 375 F. Supp. 3d 574, 587 (E.D. Pa. 2019))).

[3] Because this Court finds that the product liability claim against Paccar may proceed, it will not dismiss the Wrongful Death claim (Count IV of the Second Amended Complaint), either.