## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY HENISCH, *as Administratix of*
*the Estate of THOMAS J. HENISCH,*
*deceased,*

    Plaintiff,

        v.

OSHKOSH CORPORATION, *and*
MCNEILUS TRUCK AND
MANUFACTURING, INC.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:23 CV 2147
Magistrate Judge Maureen P. Kelly

Re: ECF Nos. 129 and 131

## <u>MEMORANDUM OPINION</u>

**KELLY, Magistrate Judge**

    Presently before the Court are motions filed on behalf of Defendant McNeilus Truck and Manufacturing, Inc. ("McNeilus") to exclude proposed experts James L. Glancey, Ph.D, ("Glancey") and Mark Sokalski, P.E., ("Sokalski") from testifying at trial. ECF Nos. 129 and 131. For the reasons that follow, the motions are granted in part and denied in part.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    On June 23, 2021, Thomas J. Henisch ("Henisch") was operating a McNeilus cement mixer in the course of his employment with Riverside Concrete & Supply, Inc. ("Riverside"). ECF No. 20 ¶¶ 12, 16. Plaintiff Kimberly Henisch, as Administratrix of Henisch's estate, ("Plaintiff") alleges that while cleaning the cement mixer, Henisch was struck in the abdomen by the mixer's chute. His injuries led to his hospitalization and, as alleged, to his eventual death on September 5, 2021. Id. ¶¶ 16, 18, 25. There were no witnesses to the incident. Thus, the

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed.   ECF Nos. 106, 107, and 108.

mechanism of injury relies in large part upon conflicting statements made by Henisch to co-workers, responding paramedics, emergency room physicians, and to his son prior to his death. See ECF No. 133 at 2-3.

The cement mixer, identified by Riverside as Truck 43, was manufactured by McNeilus in 2001, and mounted on a 2002 Peterbilt semi tractor-trailer that was distributed by Paccar, Inc.[2, 3] ECF No. 20 ¶ 13; ECF No. 130 at 1; ECF No. 131-3 at 4. McNeilus equipped Truck 43 with a hydraulic chute from which cement was poured. The chute was designed and distributed with a pneumatic locking system and a separate manual lock. McNeilus asserts that it also distributed Truck 43 with warning labels related to the safe operation of the chute. It is undisputed that all but one label was missing or had been removed prior to 2021. ECF No. 20 ¶ 15; ECF No. 130 at 10-11, 13.

At 1:30 p.m. on the day of the incident, Henisch was standing near the rear or side of Truck 43 and washing it out at a reclaim pit located at the end of a sloped surface. ECF No. 133 at 1; ECF No. 129-3 at 12, 18. Edward Dayton ("Dayton"), a co-worker at Riverside, was performing a similar task and observed that Henisch's chute was in the down position. ECF No. 131-3 at 3. Dayton finished cleaning his truck and drove to Riverside's fueling area. At 2:53 p.m., Henisch arrived at the fueling area and fell or slid out of the truck's cab. Id. Dayton ran to Henisch's side. Henisch told Dayton and one of Riverside's owners that the chute shutter struck his stomach. ECF No. 133 at 2. Dayton noted that the chute was still in the down position.

---

[2] Plaintiff's claims against Paccar have been resolved. ECF No. 102.

[3] Plaintiff alleges that the mixer was designed and manufactured by Defendant Oshkosh Corporation or by McNeilus. ECF No. 20 ¶¶ 12-14. McNeilus does not dispute that it designed, manufactured, and installed the mixer and rear discharge chute. ECF No. 133-9 at 12. Oshkosh contends it is "merely McNeilus's parent company," and that McNeilus has not acted as an alter ego of Oshkosh. ECF No. 121 at 2. Thus, the pending motions are presented only on behalf of McNeilus.

Henisch later told his son that a bolt snapped while he was folding the chute back into the upright position causing the chute to fall and hit him in the stomach. ECF No. 133-4 at 2.

Riverside employees called emergency services, and an ambulance arrived to assess and transport Henisch. An emergency medical technician ("EMT") recorded Henisch's statement that a portion of the chute on the rear of the truck struck him in the abdomen. ECF No. 133-3 at 1. The EMT also reported that Henisch could not move or feel his legs. Henisch informed the EMT that he was on blood thinners for treatment of atrial fibrillation. The EMT recorded that there was "no obvious abdominal trauma noted at the time of initial patient contact." Id. Later, upon further examination, the EMT noted that Henisch's abdomen was firm upon palpitation, with mottling below the navel, and there was a minor abrasion to the area that divides the right upper quadrant from the right lower quadrant. Id. at 2. Henisch also reported pain upon palpitation.

Henisch was hospitalized and treated for ischemia stemming from an abdominal aortic aneurysm. Henisch died while hospitalized on September 5, 2021. His condition was deemed on autopsy to be consistent with trauma to the abdomen. ECF No. 133-5; ECF No. 133-6.

 On June 27, 2023, Cynthia Gamble, Administratrix Pendent Lite of the Estate of Thomas Henisch, commenced this action in the Court of Common Pleas of Allegheny County against Peterbilt Motors, Co., Paccar, Oshkosh, McNeilus, and Smith-Greyson D.O.T. Consulting, LLC. ECF No. 1-2; ECF No. 1-3 at 2.  On December 1, 2023, Gamble filed an Amended Complaint that omitted Smith-Grayson, a Pennsylvania limited liability corporation. ECF No. 1 at 4 n.2; ECF No. 1-3 at 349. With diversity jurisdiction satisfied as to all remaining Defendants, Paccar removed the case to this Court on December 21, 2023, under 28 U.S.C. §§ 1332, 1441 and 1446(b)(3). ECF No. 1.  Gamble filed a Second Amended Complaint on January 16, 2024, against McNeilus, Oshkosh, and Paccar. ECF No. 20. As relevant to the pending motions, the

Second Amended Complaint alleges state-law claims against McNeilus and Oshkosh for strict liability – failure to warn (Counts V and XI); strict liability – defective design (Counts VI and XII); negligence (Counts VII and XIII), and wrongful death (Counts X and XVI), for injuries she claims were sustained by Henisch in the incident that led to his death. Id.

At this stage of the litigation, the pleadings are closed; and fact discovery, expert disclosures, and expert depositions are complete. ECF No. 87. On April 7, 2025, then presiding District Judge Arthur S. Schwab issued a comprehensive pretrial schedule, set trial for November 17, 2025, and directed all parties to indicate their willingness to proceed to trial before a Magistrate Judge. ECF No. 104. Soon thereafter, the parties consented to the jurisdiction of a United States Magistrate Judge and this case was reassigned to the undersigned. ECF Nos. 106, 107. The undersigned conducted a status conference with all parties on May 15, 2025. After reviewing the background of the case and the remaining claims, the Court directed Defendants to re-file their motions to exclude liability experts. ECF No. 125.

On May 28, 2025, Gamble filed a Motion to Amend Case Caption to reflect that Kimberly Henisch, Henisch's wife, was named as the Administratrix of his estate and is the proper plaintiff in this action. ECF No. 127. The motion was granted on May 29, 2025. ECF No. 128.

The pending motions to exclude Plaintiff's experts were filed on May 30, 2025, with supporting briefs and exhibits. ECF Nos. 129-132. Plaintiff filed her opposing briefs and exhibits on July 18, 2025, and McNeilus filed its reply briefs on August 6, 2025. ECF Nos 142-145. That same day, the Court ordered the parties to file supplemental briefs to address the impact, if any, of the recently issued precedential opinion of the United States Court of Appeals for the Third Circuit in Slatowski v. Sig Sauer, Inc., 148 F.4th 132 (2025), on the admissibility of the

proffered expert testimony. The parties filed their supplemental briefs as directed on August 20, 2025. ECF Nos. 147, 148.

The pending motions are ripe for resolution.

## II.    LEGAL STANDARDS

"Under Pennsylvania law, a seller may be liable in strict liability and negligence for injuries caused by its defective products." Sikkelee v. Precision Airmotive Corp., 907 F.3d 701, 710 (3d Cir. 2018) (citing Tincher v. Omega Flex, Inc., 104 A.3d 328, 351 (Pa. 2014)).[4] To prove a strict product liability claim, a plaintiff must establish "'(1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands.'" Id. (quoting Pavlik v. Lane Ltd./Tobacco Exporters Int'l, 135 F.3d 876, 881 (3d Cir. 1998), and citing Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997)). A negligence cause of action for product liability also requires the plaintiff to prove causation. Id. (quoting as modified Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003) ("a plaintiff must demonstrate '(1) that the defendant had a duty to conform to a certain standard of conduct; (2) that the defendant breached that duty; (3) that such breach caused the injury in question; and (4) actual loss or damage.'")). The plaintiff bears the burden of proving each element. Slatowski, 148 F.4th at 137.

Here, Plaintiff proffers expert testimony to prove that the cement mixer was defective as designed because it lacked safety features to prevent uncontrolled chute movement and did not sufficiently warn of the dangers associated with its product. Plaintiff's experts also opine that the identified defects caused Henisch's injuries.

Federal Rule of Evidence 702 outlines the conditions that must be met for a witness to testify as an expert:

---

[4] The parties do not dispute that Pennsylvania substantive law applies to this action.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. See also Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (to be admissible under Rule 702, expert testimony must satisfy "three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact."). These factors are often referred to as "qualification," "reliability," and "fit." Schneider ex rel. Est. of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).

In Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590 (1993), the United States Supreme Court concluded that Rule 702 "clearly contemplates some degree of regulation of the subjects about which an expert may testify," and the trial judge's corresponding "gatekeeping role." Id. at 590, 597. As a gatekeeper, the trial judge must ensure that "any and all expert testimony or evidence is not only relevant, but also reliable." Pineda, 520 F.3d at 243. Thus, the Court must evaluate whether the expert evidence evinces "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

The Court's consideration of the pending motions is guided by Rule 702 to ensure that admissibility "is based on valid reasoning and reliable methodology." Oddi v. Ford Motor Co.,

234 F.3d 136, 146 (3d Cir. 2000)(citation modified). That said, in assessing whether these requirements have been met, Rule 702 embraces a "liberal policy of admissibility," under which it is preferable to admit any evidence that may assist the trier of fact. <u>Pineda</u>, 520 F.3d at 237 (quoting <u>Kannankeril v. Terminix Int'l, Inc.</u>, 128 F.3d 802, 806 (3d Cir. 1997)).

## III.    DISCUSSION

Plaintiff  seeks to introduce Glancey and Sokalski's reports and proposed testimony to support her negligence and strict liability claims. Glancey and Sokalski present alternative mechanisms of injury and design and warning defects that they assert caused Henisch's injuries. ECF Nos. 95-96.

Glancey contends that Henisch was injured by the chute's sudden lateral (side-to-side) movement. "At some time while the decedent was standing near the back of the cement mixer, the chute of the mixer began to move, violently striking him in the abdomen and causing severe internal injuries." ECF No. 95 at 9. Glancey identifies three defects that he asserts resulted in injury. First, Glancey faults the absence of a momentary or dead man's switch that "would only allow the chute to [be] moved when the switch is engaged by the operator – essentially preventing unexpected chute movement while the operator's hand is engaged with the [control] pendant." <u>Id.</u> at 17. Second, Glancey opines that the incorporation of "gas shocks or gas springs" would have limited movement "of the portions of the chute that can swing freely – namely the whole chute or just the fold-over chute and shutter." <u>Id.</u> at 18. Third, Glancey asserts that Truck 43 lacked sufficient warnings and instructions "alerting Mr. Henisch of the inherent hazard associated with chute design," and "to teach [Henisch] how to properly clean the mixer body and the rear discharge chute system." <u>Id.</u> at 19.

7

Plaintiff presents an alternative theory of causation through Sokalski. Sokalski opines that Henisch was injured when he was cleaning the inside of the drop-down chute while it was folded in a near vertical position over the reclaim pit. ECF No. 96 at 12. Sokalski asserts that "the water pressure against the chute and the water weight and debris washings on the inside plate of the chute shutter caused the drop-down chute to abruptly and unexpectedly drop down. The drop-down motion of the drop-down chute forced the chute shutter plate into Mr. Henisch's abdomen and pinned Mr. Henisch against the rear bumper of Truck 43."[5] Id. Sokalski contends that a folding chute shutter design would have prevented Henisch's injuries. Id. at 13. Alternatively, Sokalski opines that if statements that the chute (and not the chute shutter) hit Henisch are accurate, the chute "theoretically could have" rotated due to gravity due to the slope adjacent to the washout reclaim pit. Id. Finally, Sokalski opines that Truck 43 was distributed without instructions or warnings describing the dangers of unexpected motion of the chute and chute shutter. Id. at 13-14.

McNeilus seeks to exclude both experts from testifying at trial because the proffered opinions as to causation and alleged design defects are based on speculation, untested, and not subjected to scientific scrutiny. As to warnings, McNeilus contends the opinions are offered without the required expertise and without scientific methodology. ECF No. 130; ECF No. 132 at 2. Upon review, the Court concludes that all opinions as to causation should be excluded, but the testimony of each proposed expert is admissible limited to the operation and design of Truck 43, the operation of proposed alternative designs, and the need for warnings.[6]

---

[5] Sokalski's report depicts the chute shutter in a closed and in a dropped down position. See ECF No. 131-3 at 7-8.

[6] The Court finds that an in-person Daubert hearing is unnecessary. McNeilus has provided the Court with each proposed expert's reports and extensive deposition testimony, and there are no factual disputes or areas of the experts' reports that require clarification. See Oddi, 234 F.3d at 154.

A. **Motion to Exclude Testimony of James Glancey, Ph.D.**

1. **Glancey is qualified to testify as an expert on warnings.**

McNeilus moves to exclude Glancey's expert report and proposed testimony related to the adequacy of the cement truck's warnings on qualification grounds. ECF No. 130 at 5-7. McNeilus contends that Glancey lacks both education and practical experience in warnings, human factors, psychology, or industrial engineering, and has been excluded from testifying regarding warnings "multiple times." Id.

As part of its gatekeeping function, the trial court must examine Glancey's formal qualifications and proposed testimony to determine whether he is substantively qualified as a warnings expert. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). Qualification requires specialized expertise. However, Rule 702's qualification requirement is interpreted liberally to permit testimony based on a "broad range of knowledge, skills, and training." Id. "The basis of [the expert's] specialized knowledge can be practical experience as well as academic training and credentials." Elock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). In Pineda, a proposed expert's formal qualifications in metallurgy and material sciences did not preclude his testimony that an explicit warning to follow instructions to avoid injury should have been set forth in the product's service manual. Pineda, 520 F.3d at 245. No additional expertise was required because the proposed testimony did not include "how the warning should be worded or how it should appear in order to effectively convey its message." Id.

Glancey is equally qualified to proffer an opinion on the need for warnings. Glancey is a registered professional mechanical engineer and possesses a doctorate and master's degree in mechanical engineering. ECF No. 129-4 at 1. He serves on the faculty of the University of Delaware as a tenured professor of mechanical engineering and has taught courses in machinery

design. Glancey also has lectured on manufacturing processes and machine design. Id. at 1-3. In addition, he is a principal and owner of a firm that has consulted with the members of the legal profession in over 200 cases involving failure analysis and testing of industrial and consumer products. Id. at 30-38.

In this case, Glancey opines that Truck 43 was defective because, among other alleged lapses, McNeilus failed "to warn of the dangers of the chute's movement" and "the increased velocity and hazardous force of the chute's movement due to gravity during the required cleaning procedures after a load of concrete is delivered." ECF No. 129-3 at 14. See also id. at 19 ("warnings and labels affixed to the subject truck ... lacked any warning alerting Mr. Henisch of the inherent hazard associated with chute design. In fact, the manual and warnings do not identify the risk of chute movement and impact with the operator.").

While his opinion may suffer other weaknesses that can be challenged through cross-examination at trial, Glancey's qualifications are not among them. Glancey does not opine on wording or the appearance of any proposed warning that would require specialized human factors experience and education. Id. at 16. Instead, based on his academic and practical engineering experience, he opines that a proper warning is a recognized engineering strategy to resolve a risk of injury. Id.; see also Pineda, 520 F.3d at 246; Wentz v. Black & Decker, No. 20-cv-1853, 2023 WL 316786 (W.D. Pa. Jan. 19, 2023) (concluding that Glancey is qualified to opine on the need for warnings. "Based on his decades of experience, [Glancey] certainly possess more specialized knowledge that then the average layman about product design.... And that knowledge gives him a heightened understanding of the important role product warnings play from an engineering perspective."). Therefore, the motion to exclude Glancey's testimony based on his qualifications is denied.

2.        **Reliability and Fit**

Plaintiff bears the burden to show by a preponderance of the evidence that her experts'

opinions are reliable. Whyte v. Stanley Black & Decker, Inc., 514 F. Supp. 3d 684, 691 (W.D.

Pa. 2021) (citing Oddi, 234 F.3d at 144). In making that assessment, an "expert's testimony is

admissible so long as the process or technique the expert used in formulating the opinion is

reliable." Pineda, 520 F.3d at 247 (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742

(3d Cir. 1994)).

> "The hallmark of Daubert's reliability prong is the scientific method." Soldo v.
> Sandoz Pharms. Corp., 244 F. Supp. 2d 434, 559 (W.D. Pa. 2003) (explaining
> Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593, 113 S.Ct.
> 2786, 125 L.Ed.2d 469 (1993)). In turn, "the scientific method [is] the generation
> of testable hypotheses that are then subjected to the real-world crucible of
> experimentation, falsification/validation, and replication." Id. at 457; see also
> Daubert, 509 U.S. at 590, 593, 113 S.Ct. 2786 (requiring "appropriate validation"
> and focusing on "whether [a theory or technique] can be (and has been) tested").
> Speculation does not cut it. After all, "the word 'knowledge' connotes more than
> subjective belief or unsupported speculation." Daubert, 509 U.S. at 590, 113 S.Ct.
> 2786.

Slatowski, 148 F.4th at 138.

The Third Circuit has identified eight relevant factors when conducting the reliability

inquiry:

> (1) whether a method consists of a testable hypothesis; (2) whether the method
> has been subjected to peer review; (3) the known or potential rate of error; (4) the
> existence and maintenance of standards controlling the technique's operation; (5)
> whether the method is generally accepted; (6) the relationship of the technique to
> methods which have been established to be reliable; (7) the qualifications of the
> expert witness testifying based on the methodology; and (8) the non-judicial uses
> to which the method has been put.

Oddi v. Ford Motor Co., 234 F.3d at 145 (citation modified).

The expert testimony must also "'fit', in that it must assist the trier of fact." Id. (citation

modified). This factor requires consideration of relevance or helpfulness and requires "a valid

scientific connection to the pertinent inquiry as a precondition to admissibility."   Id. at 136 n.12 (quoting Daubert, 509 U.S. at 591–92).

### a.    Causation and Design Defect

McNeilus argues that Glancey's opinions as to causation and design defect are unreliable and inadmissible because they are based on speculation and lack scientific methodology. ECF No. 130 at 8. McNeilus contends that Glancey lacks a factual foundation to support his opinion that: (1) Henisch was standing next to the chute when he was injured, (2) Henisch engaged or disengaged the pneumatic chute lock, and (3) the chute's uncontrolled lateral movement caused Henisch's injury. Id. at 14.  McNeilus points to Glancey's failure to conduct any testing of the involved cement mixer or of any other cement mixer to determine whether chute's lateral movement caused the incident at issue; whether the chute's movement could generate the force required to cause injury; or whether the proposed design changes would have prevented Henisch's injuries. Glancey also failed to subject his causation or alternative design theories to peer review. Id. at 8, 12-17. McNeilus argues that these lapses are amplified by Glancey's conceded failure to confirm that the chute was in the same condition at the time of his inspection in 2021 as when it left McNeilus's control in 2001, and his inability to identify or document any similar accident history on the McNeilus model at issue to test his theory that uncontrolled lateral movement caused Henisch's injury. Id.

Plaintiff responds that Glancey's opinions as to defect and causation are well-supported by the evidence and sufficiently reliable for admission. ECF No. 133 at 9-19. Plaintiff asserts that the evidence supports Glancey's theory that uncontrolled lateral chute movement was the mechanism of injury. While no one witnessed the incident, co-workers observed that the chute was in the down position shortly before and after Henisch drove the cement mixer to the fueling

area. Henisch reported to coworkers that he was struck in the stomach by the chute shutter. Henisch separately reported that he was hit by the chute to EMS personnel, who reported an abrasion on Henisch's abdomen. Glancey corroborates his causation theory with Henisch's autopsy report issued three months after the incident that concluded Henisch's cause of death was abdominal trauma. Apart from Henisch's statements and medical condition, Plaintiff points to Glancey's methodology. Glancey explains that he used the Forensic Engineering Method to investigate and determined the cause of Henisch's injury. ECF No. 129-3 at 7. This method "applies existing science and the Scientific Method in conjunction with knowledge, education, experience, training, and skill to uncover the parameters and causes of an incident that produced undesirable results." Id. at 8. According to Glancey, this method incorporates "experimentation and/or calculation" to reach a conclusion. Id. But Glancey concedes that he never tested any of his theories and did not subject them to peer review.

To be reliable, Glancey's opinion "must be 'the product of reliable principles and methods,'" comprised of "'testable hypotheses that are then subjected to the real-world crucible of experimentation, falsification/validation, and replication.'" Slatowski, 148 F.4th at 138 (quoting Fed. R. Evid. 702 and Soldo v. Sandoz Pharms. Corp., 244 F. Supp. 2d 434, 559 (W.D. Pa. 2003)). In this case, the parties do not agree if contact with the chute or contact with the chute shutter caused Henisch's aortic aneurysm or emboli. Yet, based on the slope of the ramp and angle of the chute, a minor abrasion on Henisch's abdomen, Henisch's conflicting statements to coworkers and EMS, and the fact that the chute could move only if the pneumatic lock was disengaged, Glancey concludes that Henisch "had to be" standing next to the chute when he was injured, and that the chute's uncontrolled lateral movement caused Henisch's injury. ECF No. 129-5 at 34-39, 49-55. He asserts that the forensic method he employed

provides a sufficient scientific basis for his opinion because it derives from the laws of physics and mathematical calculations that explain the movement of the chute under the influence of gravity. Id. at 196-97.

As presented, Glancey's opinions as to causation are not supported by reliable methodology. Glancey concedes that he is not qualified as an expert in the field of accident reconstruction. ECF No. 129-5 at 196. He also concedes that he did not perform any test to replicate the conditions of the incident. Id. at 103, 111-12. Glancey did not conduct any experiments to confirm his opinion that the chute was capable of "violent" uncontrolled movement, or that lateral movement of the chute, even on an incline, could generate the force necessary to cause Henisch to sustain the injuries alleged. Glancey admits he did not locate any literature presenting or describing instances of uncontrolled chute movement involving McNeilus's cement trucks to support his conclusions. Id. at 192-98. Glancey also did not validate his findings or otherwise test his opinion on Truck 43 at the reclaim pit to confirm that the chute would move as opined. Finally, Glancey did not test his proffered modifications to the chute's pneumatic brake system to confirm that the incident, if it occurred as speculated by him, would have been prevented. Id.

Thus, Glancey's opinion may be "reliable about whether the [McNeilus] design *could have* caused an accident, but not whether it *did* cause this accident. That would have required not just theory, but factual context." Slatowski, 148 F.4th at 138 (emphasis in original); see also Meadows v. Anchor Longwall & Rebuild, Inc., 306 F. App'x 781, 789 (3d Cir. 2009) (affirming exclusion of evidence where expert failed to replicate conditions at the time of the accident and failed to identify literature describing the failure scenario he presented).[7] Absent a tested

---

[7] Slatowski was accidentally shot after he reached into his holster and his gun discharged when he touched the grip and without engaging the trigger. Slatkowski's experts opined that the gun was defective because it lacked an

scientific method, Glancey's causation opinions rest on little more than his subjective beliefs and must be excluded as unreliable. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Because Glancey's causation opinion is not reliable, his proffered testimony also fails to "fit" the facts of the case or assist the trier of fact to satisfy the third factor under Rule 702. See Meadows, 306 F. App'x at 790 (citing Lauria v. Amtrak, 145 F.3d 593, 599 (3d Cir. 1998)). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. (quoting Lauria, 145 F.3d at 600). Thus, his conclusions as to causation are properly excluded.

That said, Glancey may testify in a limited fashion as to the cement mixer's alleged design defects while leaving the issue of causation for jury resolution. As recognized in Slatkowski, for Plaintiff to prove that Truck 43 was defectively designed, she will have to show that it is unreasonably dangerous. This requires proof "either (1) that an ordinary consumer would not know of the unacceptable danger, or (2) that the risk and seriousness of harm outweigh the cost of a safer design. Either way, the plaintiff will have to explain to the jury both how the product works and how it could cause an injury." Slatkowski, 148 F.4th at 140 (citation modified). A functional approach to admissibility of expert testimony under Rule 702 permits an

---

external safety that would "stop[] a gun from firing until the shooter does something to turn the safety off." Slatkowski, 148 F.4th at 135. But neither expert tested his theory to determine "how the conditions that could cause accidental firing might have manifested on the day of Slatkowski's accident. Thus, their causation testimony was properly excluded. Id. at 138.

In this case, Glancey opines that the product was defective because it lacked a dead man's switch, and (like a gun safety) "[t]here is no question but that a dead man's switch would have prevented this accident. That's what a dead man's switch does." Id. But Plaintiff glosses over the various theories of how Henisch was injured and whether either alternative design would have prevented injury given as posited by Sokalski, the chute shutter fell when the chute was folded in a vertical position; or as posited by Glancey, the chute rotated or swung in an uncontrolled fashion because it was extended on an angle while on a sloped ramp; or as his son reported, a bolt holding the chute broke causing it to fall. A dead man's switch, like a gun safety, could stop movement but absent testing under the conditions on the day of Henisch's accident, Glancey's causation opinion is not reliable and must be excluded.

expert to testify on the operation of complex products and proposed alternative designs to address an alleged design defect. Glancey invokes the "failure modes analysis" to explain that the design of the chute locking mechanisms leaves an inherent danger of uncontrolled movement. ECF No. 129-3 at 15-18; Wentz, 2023 WL 316786, at *6. This analysis is based on a recognized scientific approach and thus is sufficient to permit Glancey to explain the operation of the cement truck, its various parts, and the operation of proposed alternative designs such as a dead man's switch and gas shocks to prevent or slow uncontrolled chute movement. This information is not common knowledge. Slatkowski, 148 F.4th at 140. ECF No. 133 at 12, 16-17. A jury may then determine, based on the information presented, including any admissible statements by Henisch, whether his injuries occurred when he was struck by the chute and if so, whether the cement truck was defective because it lacked a dead man's switch or gas shocks.

### b. Warnings

McNeilus asks the Court to exclude Glancey's opinion that the cement mixer is defective because it lacks appropriate warnings and instructions. McNeilus asserts Glancey's opinion is unreliable because it is not based on any identifiable scientific methodology. ECF No. 130 at 9.

Glancey's warning opinion rests on his engineering background and invokes the failure modes analysis. ECF No. 129-3 at 15. That analysis includes the use of a warning in the hierarchy of risk recognition and mitigation. See Wentz, 2023 WL 316786, at *6 (Glancey's use of Failure Modes and Effects Analysis is sufficient for admission of opinion as to alleged warnings defects). Thus, Glancey's opinion is based on an identifiable scientific method. See also Pineda, 520 F.3d at 248 (engineering expert with specialized experience in area at issue may proffer an opinion that the lack of warning or instructions related to danger is a safety issue for user and may do so without developing or testing alternative warnings).

16

McNeilus also challenges Glancey's opinion as unreliable and speculative because Glancey concedes that he was unaware that McNeilus issued warning labels with its cement mixers at the time of distribution in 2001. ECF No. 129-5 at 129; see also ECF No. 129-6 at 38-42 (depicting McNeilus warnings labels). Plaintiff responds that McNeilus's argument is based on evidence that warning labels were included in its 1996 Parts Book. However, inclusion in a parts book five years before product distribution does not establish that the labels were affixed in 2001, considering the undisputed absence of warning labels on Truck 43 in 2021. ECF No. 133 at 20-21. The Court agrees that McNeilus raises a disputed issue of fact that requires an assessment of witness credibility that is not properly resolved through the pending motion. Thus, relief on reliability grounds based on the existence of product labels is not warranted.

The Court briefly addresses Plaintiff's argument that even if a warning label related to uncontrolled chute movement was present on the truck when delivered, liability may be imposed based on the lack of prominence or size, position, coloring, or lettering of the warning. Id. But this basis for admission lacks the required foundation. Glancey does not proffer an opinion based on prominence, size, or coloring of the warnings issued, nor could he given his limited qualifications that restrict admissibility of his opinion to the generalized need for a warning of potential uncontrolled chute movement. See infra at 9-10; see also Pineda, 520 F.3d at 245 n.12 (a claim that an existing warning or instruction was ineffective, misleading, or otherwise defective due to syntax, color, size, placement, clarity, or any other factor may require "a true 'warnings expert'").

**B.** **Motion to Exclude Testimony of Mark A. Sokalski, P.E.**

Sokalski presents four findings related to Henisch's cause of injury.

(1)     Thomas Henisch was injured when the drop-down chute dropped down from the vertical standing position while Mr. Henisch was in the process of washing the drop chute and chute shutter.

(2)     The water pressure and water weight shifted (rotated) the drop-down chute and caused it to fall abruptly. When the drop-down chute fell, it forced the chute shutter forward toward the truck and into Mr. Henisch's abdomen, forcing Mr. Henisch towards the front of Truck 43 and pinning his back against the rear bumper.

(3)     Oshkosh/McNeilus failed to provide safety instructions and precautionary warnings on how to properly open, clean, and close the drop-down chute and how the chute shutter should be properly operated and how the chute shutter's movement can cause serious injury

(4)     Oshkosh/McNeilus failed to provide[] safety instructions and precautionary warning for anyone not to be under or anywhere near the main chute when the drop-down chute is not in the fully down position or mechanically locked in the upright position.

(5)     Above Items 3 and 4 are both significantly contributing causes of the June 23, 2021 injury to Mr. Thomas Henisch.

ECF No. 131-3 at 14. McNeilus moves to exclude each of these opinions based on qualifications (as to warnings), reliability, and fit. ECF No. 132. The Court addresses each argument as follows.

### 1.     Sokalski is qualified to testify as an expert on warnings.

McNeilus challenges Sokalski's qualifications to offer an opinion on the sufficiency of its warnings based on Sokalski's lack of education and practical experience to qualify as a warning expert. Id. at 11. McNeilus points to Sokalski's bachelor's degree in chemical engineering and his lack of work experience in warnings and human factors generally and with concrete mixers specifically. Id. at 12.

Upon review, Sokalski has over 40 years of experience as a registered Professional Engineer. He has worked for at least two decades as a forensic engineer and his prior work experience includes employment as a production and operations foreman responsible for the evaluation and revision of safety processes, safety inspections, and safety equipment inspections. ECF No. 131-3. His lack of  specialized warnings experience is overcome by his years of practical experience that permits testimony based on a broad range of knowledge, training, and practical experience. Elock, 233 F.3d at 741; see also supra at 8-10. Like Glancey, Sokalski concedes he is not a warnings or human factors expert and so he does not opine on the wording or appearance of a hazard warning. ECF No. 131-5 at 88-89. Instead, he opines that McNeilus should have provided warnings and instructions related to the operation and a chute shutter and the danger of being under a mixer chute when it is not locked in position. Id. at 105. The motion to exclude Sokalski's warnings testimony based on his qualifications is denied.

### 2.    Reliability and Fit

#### a.    Causation

The Court concludes that like Glancey's causation opinion, Sokalski's causation opinion is not based on testable data or experimentation and lacks scientific validation. Thus, his opinion as to what caused Henisch's injury is speculative, unreliable, and not helpful, as required by Rule 702.

Sokalski concedes he is not an expert in accident reconstruction, and he has never operated a cement truck. ECF No. 131-5 at 87-88, 98. In arriving at his conclusion that Truck 43 was defective because the chute fell from a folded-up position, Sokalski does not know where Henisch was standing, whether he had started cleaning the chute or whether he was finished, and he does not know and did not calculate the weight of the chute's contents. Id. at 68-69, 74-76,

122-23, 160-161. He also does not know if the chute was locked in place with the pneumatic or manual lock before unfolding (or folding), and he assumes Henisch unlocked the manual lock. Id. at 109-11. Sokalski measured the slope of the ramp with his I-Phone and opines on existing gravitational forces, but he does not know where the rear of the chute was located relative to the top of the ramp, and he did not position Truck 43 or an exemplar to identify the angle. Id. at 26-28. Sokalski also did not test the water pressure from the water tank at the site or on the mixer to determine whether the force generated by a hose was sufficient to cause the chute and chute shutter to drop. Id. at 47-48, 149-50, 154-55, 159. He agrees that the weight of debris in the chute would affect the force necessary for the chute to fall but he doesn't know whether any debris remained in the chute at the time of the incident. Id. at 159. Sokalski also did not recall that Henisch's son reported that his father told him a bolt broke. Id. at 121.

Despite these factual gaps and the lack of any testing of the potential forces generated, Sokalski believes the incident occurred when Henisch was cleaning the chute in a folded position and the weight of water and debris caused the chute shutter to fall and "hit him right in the gut." Id. at 128-140, 151-53. Sokalski believes that a folding shutter would have prevented Henisch's injuries. ECF No. 131-3 at 13. He also opines that Glancey's opinion related to "[a]n unexpected chute rotation due to gravity … theoretically could have caused this incident" and could have been avoided with a momentary switch. Id. However, as to both theories, in the absence testing and eyewitnesses, Sokalski agrees he assumes a factual foundation that provides an explanation of "what probably happened." ECF No. 131-5 at 128, 154, 160-166.

As revealed by his testimony, Sokalski's causation opinions are not supported with substantial physical or documentary evidence, testing, or peer review analysis to be based on reliable methodology. Like Glancey's opinion, Sokalski's opinions may be reliable as to whether

the chute or chute shutter design *could have* caused Sokalski's injury, but not whether they *did*. See *supra* 14-15 (citing <u>Slatowski</u>, 148 F. 4th at 138). See also <u>Meadows</u>, 306 F. App'x at 789 (excluding Sokalski's opinion as unreliable because he did not replicate the conditions presented at the time of accident or identify literature describing the failure scenario he presented). Thus, Sokalski's opinions as to causation are properly excluded as unreliable under Rule 702. However, as explained in <u>Slatowski</u>, he may testify on the design and operation of the chute and chute shutter, and as to the operation and design of a folded chute shutter.

**b.    Warnings**

McNeilus also seeks to exclude Sokalski's warnings/instructions opinion as unreliable and not helpful because Sokalski did not prepare or test alternative warnings nor explain why existing instructions and warnings are insufficient. ECF No. 132 at 12-17.

Plaintiff responds that McNeilus cannot rely on labels found in a 1996 parts manual to exclude Sokalski's opinion because there is no evidence that the labels McNeilus relies upon were affixed to Truck 43 at the time of delivery in 2001. ECF No. 134 at 18 -19. McNeilus also lacks evidence that the Standard Parts Book and Operator's Manual were available to be reviewed by Henisch in the course of his employment. <u>Id.</u> Thus, Sokalski's extensive forensic engineering background permits him to opine (1) that McNeilus failed to provide necessary instructions on safe methods to open, close, and clean the drop-down chute or guidance on the operation of the chute shutter, and (2) that this failure created a danger that caused Plaintiff's injury. <u>Id.</u>

Under Rule 702's flexible standards for admission, Sokalski "did not have to develop or test alternative warnings to render an opinion" that Truck 43 should have been distributed with a warning or instructions for the safe operation of the chute. <u>Pineda</u>, 520 F.3d at 248. Using his

specialized experience as a forensic engineer, Sokalski examined the cement mixer and chute construction and observed the absence of instructions or warnings on Truck 43 on the day of his inspection. Based on this information, he provided an opinion that the absence of instructions or warnings is dangerous to users cleaning, raising, or lowering the cement mixer chute who may not know that the chute could fall or move in an uncontrolled fashion. ECF No. 131-5 at 105 ("I'm more concerned with instructions on what to do, how to – how to operate, … how to lower the drop-down chute without knocking somebody's head off, without getting your fingers pinched, without hitting the chute shutter into your stomach."). Sokalski's practical knowledge and experience coupled with his examination of available evidence meets the lower bar necessary for his warning opinion to be reliable and fit under Rule 702. See Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 81 (3d Cir. 2017) (quoting In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999) ("the Court looks to whether the expert's testimony is supported by 'good grounds.' The standard for reliability is 'not that high.' It is 'lower than the merits standard or correctness.'")). His warning theories may be tested on cross-examination and a jury may determine, based on all the evidence, whether instructions and warnings were deficient or lacking as Plaintiff contends and if so, whether their absence caused Henisch's injury.

The motion to exclude Sokalski's opinion that warnings were necessary is denied.

### C.    Alternative Causation Theories

McNeilus also moves to exclude Plaintiff's experts because they present alternative defect and causation theories. ECF No.  130 at 18-19; ECF No. 132 at 17-18. McNeilus contends that the differences render both opinions unreliable and unhelpful to a jury and, therefore, subject to exclusion under Daubert. Id. Plaintiff responds that the law permits her to plead and prove

alternative theories of liability. ECF No. 134 at 20 (citing Fed. R. Civ. P. 8(d)(2) and Berger & Montague v. Scott & Scott, 153 F. Supp. 2d 750 (E.D. Pa. 2001)).

As earlier explained in this Memorandum Opinion, under Daubert and Slatkowski neither Glancey nor Sokalski may testify that the cement mixer design *caused* Henisch's injuries because their causation opinions are based on little more than subjective belief or unsupported speculation, and lack the requisite scientific validation. See Daubert, 509 U.S. at 590. But, as presented, Plaintiff's experts may testify that the cement mixer was defective by explaining how the cement mixer works, how a dead man's switch, gas shocks, or a folding shutter work, and how an injury could occur in their absence. Slatkowski, 148 F.4th at 138. To the extent Plaintiff's experts' explanations lack consistency, the proper avenue for McNeilus to contest them is through cross-examination at trial. A jury may then determine whether the evidence and testimony presented is persuasive and whether any alleged defect caused Henisch's injuries.

## IV.    CONCLUSION

For the foregoing reasons, the Motions to Exclude, ECF Nos. 129 and 131, are granted in part and denied in part. The Court grants McNeilus's motions to exclude Glancey and Sokalski from testifying at trial that any identified defect in the McNeilus cement mixer caused Thomas J. Henisch's injuries on June 23, 2021. McNeilus's motions for relief are otherwise denied consistent with this Memorandum Opinion.

Dated: December 18, 2025                        BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:    All counsel of record by Notice of Electronic Filing

23